## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PINCHAS RAUL,<br><br>          Plaintiff,<br><br>     v.<br><br>CHIASMA INC., DAVID STACK, RAJ KANNAN, TODD FOLEY, BARD GEESAMAN, RONI MAMLUK, SCOTT MINICK, JOHN A. SCARLETT, and JOHN F. THERO,<br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pinchas Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Chiasma Inc. ("Chiasma" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Chiasma and the Defendants.

### SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Chiasma and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a)

and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger whereby Chiasma will merge with and into Acorn Merger Sub, Inc. ("Merger Sub") with Chiasma surviving the merger as an indirect wholly owned subsidiary of Amryt Pharma plc ("Parent" and together with Merger Sub "Amryt") (the "Proposed Transaction").

2.     On May 4, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Amryt.  Pursuant to the terms of the Merger Agreement the Company's shareholders will have each share of Company common stock exchanged for 0.369 Amryt American Depository Shares ("ADSs"), each representing five Amryt ordinary shares (the "Merger Consideration").

3.     On June 29, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form F-4/A (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Chiasma and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Chiasma shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Chiasma shares.

9.      Defendant Chiasma is incorporated under the laws of Delaware and has its principal executive offices located at 140 Kendrick Street, Building C East, Needham, Massachusetts 02494.  The Company's common stock trades on the NASDAQ under the symbol "CHMA."

10.      Defendant David Stack ("Stack") is and has been the Chairman of the Board of Chiasma at all times during the relevant time period.

11.      Defendant Raj Kannan ("Kannan") is and has been Chief Executive Officer ("CEO") and a director of Chiasma at all times during the relevant time period.

12.     Defendant Todd Foley ("Foley") is and has been a Chiasma director at all times during the relevant time period.

13.     Defendant Bard Geesaman ("Geesaman") is and has been a Chiasma director at all times during the relevant time period.

14.     Defendant Roni Mamluk ("Mamluk") is and has been a Chiasma director at all times during the relevant time period.

15.     Defendant Scott Minick ("Minick") is and has been a Chiasma director at all times during the relevant time period.

16.     Defendant John A. Scarlett ("Scarlett") is and has been a Chiasma director at all times during the relevant time period.

17.     Defendant John F. Thero ("Thero") is and has been a Chiasma director at all times during the relevant time period.

18.     Defendants Stack, Kannan, Foley, Geesaman, Mamluk, Minick, Scarlett, and Thero are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant Chiasma, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

20.     Chiasma is a commercial stage biopharmaceutical company focused on developing and commercializing oral therapies to improve the lives of patients who face challenges associated with their existing treatments for rare and serious chronic diseases. Employing its Transient Permeability Enhancer (TPE®) technology platform, Chiasma seeks to develop oral medications that are currently available only as injections. In June 2020, Chiasma

received FDA approval of MYCAPSSA® for long-term maintenance therapy in acromegaly patients who have responded to and tolerated treatment with octreotide or lanreotide. MYCAPSSA, the first and only oral SSA approved by the FDA, is available for commercial sale. For the financial year to 31 December 2020, Chiasma reported revenues of $1.1 million and pre-tax loss of $74.8 million. Total assets amounted to $176.3 million, including cash and cash equivalents of $15.4 million.

**The Company Announces the Proposed Transaction**

21.     On May 5, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> DUBLIN, Ireland, and BOSTON, May 05, 2021 (GLOBE NEWSWIRE) -- Amryt (Nasdaq: AMYT, AIM: AMYT), a global, commercial-stage biopharmaceutical company dedicated to acquiring, developing and commercializing novel treatments for rare diseases, today announces that it has signed a definitive agreement to acquire Chiasma, Inc. (Nasdaq: CHMA) in an all-stock combination. The combined company will be a global leader in rare and orphan diseases with three on-market commercial products, a global commercial and operational footprint and a significant development pipeline of therapies with the financial flexibility to execute its growth plans. The transaction has been approved and recommended by the Boards of both Amryt and Chiasma.
>
> Under the terms of the transaction, each share of Chiasma common stock issued and outstanding prior to the consummation of the transaction will be exchanged for 0.396 Amryt American Depositary Shares ("ADSs"), each representing five Amryt ordinary shares. As of the close of trading on May 4, 2021 Amryt's ordinary shares on AIM were £2.00 ($2.78) per share and Amryt's ADS's on Nasdaq were $12.95 (£9.31) per ADS.
>
> Amryt already has in place the infrastructure, expertise and the financial flexibility to realize the full potential of MYCAPSSA® globally and further develop life-cycle management opportunities to expand the benefits of MYCAPSSA® to other patient populations including NET. The transaction is expected to accelerate and diversify Amryt's growing revenues and Amryt expects to deliver estimated annual cost synergies of approximately $50M.
>
> *        *        *

**Transaction Benefits**

**A leading orphan and rare disease company with a diversified portfolio of established and growing products and financial strength** - Consistent with Amryt's shareholder endorsed strategy to acquire, develop and commercialize novel treatments for rare diseases, the combined portfolio of products offers a pathway to a potential $1BN of peak revenues. Amryt has a proven track record of successful integration and expects to deliver approximately $50M in cost synergies per annum. Both Amryt and Chiasma currently enjoy a significant degree of customer call-point overlap and combining operations will provide significant salesforce scale opportunities. In the endocrinology space, both Myalept®/Myalepta® and MYCAPSSA® are growth assets and by combining and scaling salesforces, Amryt believes that this will not only drive MYCAPSSA® adoption but also enable further Myalept®/Myalepta® revenue growth. The combined business will have three approved commercial products as well as a robust clinical pipeline. Both Oleogel-S10 (if approved) and MYCAPSSA® are first-to-market novel therapies. MYCAPSSA® is the first and only oral SSA approved for appropriate patients with acromegaly and Oleogel-S10 has the potential to be the first approved therapy for EB.

**Delivers improved competitive positioning with increased scale in US, EU and beyond** - The transaction is expected to enhance the combined group's commercial and medical infrastructure globally. Amryt plans to deploy its significant expertise and commercial platforms to further accelerate the launch of MYCAPSSA® in the US and also to seek MYCAPSSA® approval and launch internationally.

**Significant market potential for MYCAPSSA® in NET -** Amryt believes MYCAPSSA® is well positioned to address the desire for an oral option in the treatment of carcinoid symptoms associated with NET. Injectable octreotide is already approved and used in the treatment of NET and SSA utilization in NET is expected to account for an estimated $1.3BN in the US and $2.4BN globally by 2028. During the first quarter of 2021, Chiasma submitted an Investigational New Drug ("IND") application for a Phase 1 relative bioavailability study followed by a single Phase 3, randomized, double-blind, placebo-controlled study of MYCAPSSA® in patients with carcinoid syndrome, which are designed to support a modified 505(b)(2) regulatory pathway for marketing approval. Subject to ongoing discussions with the FDA and completion of the Phase 1 study, we plan to commence enrollment to the Phase 3 study as early as H1 2022.

**Cultures, values and expertise aligned** - Amryt and Chiasma share a deep commitment and passion for serving patients by developing and bringing to market innovative therapies. We share a similar business philosophy of placing patients at the center of everything we do and in celebrating inclusion and diversity across our business operations.

**Expected to deliver significant shareholder value** - The acquisition is expected to be revenue and EBITDA accretive and cash generative in the first full calendar year of combined operations and substantially accretive thereafter. Significant value is also expected to be created through the realization of estimated annual cost synergies of approximately $50m. We expect that the transaction will result in a diversified and broad shareholder base with leading biotech investors supportive of the company's long-term growth plans.

*       *       *

**Transaction Overview**

- Recommended acquisition of Chiasma by Amryt in an all-stock transaction
- Chiasma shareholders will receive 0.396 Amryt ADSs for each share of Chiasma common stock, subject to rounding for fractional shares. As of the close of trading on May 4, 2021 Amryt's ordinary shares on AIM were £2.00 ($2.78) per share and Amryt's ADS's on Nasdaq were $12.95 (£9.31) per ADS.
- Based on the fixed exchange ratio, Amryt shareholders prior to the transaction will own approximately 60% of Amryt post transaction and Chiasma shareholders prior to the transaction will own approximately 40% of Amryt post transaction.
- Chiasma's existing royalty interest financing agreement expected to be fully repaid on closing delivering a high margin unencumbered asset to Amryt's portfolio
- Transaction is endorsed and supported by voting agreements with lead shareholders - Athyrium Capital Management LP, Highbridge Capital Management and MPM Capital
- Transaction is subject to the approval of Amryt and Chiasma shareholders and other customary closing conditions, including regulatory approvals
- Subject to the satisfaction or waiver of closing conditions, the transaction is expected to close in Q3 2021

**Listing, Governance and Management**

- Amryt is currently listed on Nasdaq (AMYT) and AIM in London (AMYT) and will be the publicly quoted company following closing
- Amryt's global headquarters will remain in Dublin, Ireland and its US headquarters will remain in Boston, Massachusetts
- The Amryt team will continue to be led by Dr Joe Wiley, CEO of Amryt
- Raj Kannan, CEO of Chiasma, is expected to join the Board of Amryt on closing of the transaction, subject to regulatory approval. Chiasma will nominate one additional director to join the Board of Amryt, to be confirmed on closing.

**Advisors to Amryt**

Moelis & Company LLC is serving as exclusive financial advisor and Gibson, Dunn & Crutcher LLP is serving as legal advisor to Amryt in this transaction. Shore Capital is acting as NOMAD and Joint Broker to Amryt.

**Advisors to Chiasma**

Torreya Capital LLC is serving as financial advisor and Goodwin Procter LLP is serving as legal advisor to Chiasma. Chiasma's Board of Directors was provided a fairness opinion by Duff & Phelps.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT**

22.     On June 29, 2021, the Company authorized the filing of the Registration Statement with the SEC.   The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Company's Financial Projections**

24.     The Registration Statement contains projections prepared by the Company's and Amryt's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26.    In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27.    Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBIT; and (ii) EBITDA.

28.    With respect to Amryt's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including EBITDA.

29.    Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

understanding of the analyses performed by the Company's financial advisor in support of its opinion.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding the Financial Opinions

30.    The Registration Statement contains the financial analyses and opinion of Duff & Phelps and Morgan Stanley & Co. LLC ("Morgan Stanley") concerning the Proposed Transaction, but fails to provide material information concerning such.

31.    With respect to Duff & Phelps's *Chiasma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying Duff & Phelps' application of a perpetuity rate of decline for the free cash flow of Chiasma after 2030 of 20.0 percent; and (ii) the inputs and assumptions underlying Duff & Phelps' application of a weighted average cost of capital ranging from 12.0% to 14.0%.

32.    With respect to Duff & Phelps's *Combined Company Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying Duff & Phelps' use of a perpetuity rate of decline of 20.0%; and (ii) the inputs and assumptions underlying Duff & Phelps' application of a weighted average cost of capital ranging from 10.50% to 12.50%.

33.    With respect to Duff & Phelps's *Historical Premium Analysis*, the Registration Statement fails to disclose the transactions observed in the analysis, as well as the premiums paid in each.

34.    With respect to Morgan Stanley's *Precedent Premia Analysis*, the Registration Statement fails to disclose the transactions observed in the analysis, as well as the premiums paid in each.

35.    When a banker's endorsement of the fairness of a transaction is touted to

shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not

contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

43.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and

misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

45.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Chiasma within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of Chiasma, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.      Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.      In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51.      In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.      By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 1, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*